UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | | |
|---|---|---|---|
| In re: | } | | |
| | } | | |
| John Harold Green, | } | CASE NO. | 08-40736-JJR-13 |
| | } | | |
| Debtor. | } | CHAPTER: | 13 |
| | } | | |

___

| | | |
|---|---|---|
| Heritage First Bank, a corporation | } | |
| fka DeKalb Bank, a corporation | } | |
| | } | |
| | } | |
| Plaintiff, | } | ADV. P. NO.: 08-40035 |
| | } | |
| v. | } | |
| | } | |
| John Harold Green, | } | |
| | } | |
| Defendant. | } | |
| | } | |

## MEMORANDUM OPINION

The above Adversary Proceeding came before the Court for a hearing on August 12, 2008 on the following matters:

> Heritage's Motion for Writ of Possession and Motion for Expedited Hearing (Doc. # 21);
> Debtor's Motion to Alter, Amend or Vacate (Doc. # 24);
> Heritage's Response to Defendant's Motion to Alter, Amend or Vacate (Doc. # 26); and
> Debtor's Motion to Compel and Motion for Sanctions (Doc. # 29).

On July 16, 2008 the Court entered its Order on Plaintiff's Motion for Judgment on Pleadings and Defendant's Motion to Dismiss (Remand) (Doc. #19 and herein, the "July 16 Order"). For the same reasons expressed in the July 16 Order, the Court continues to have jurisdiction over the parties and the subject matter of this Adversary Proceeding and has authority to enter final orders in the matters

1

now before the Court, all such matters being core proceedings pursuant to 28 U.S.C. § 157(b)(2). To the extent and for the reasons stated below, the Court is granting the relief requested in Heritage's Motion for Writ of Possession and Motion for Expedited Hearing (Doc. # 21 and herein, the "Motion for Possession"), and it is denying the Debtor's Motion to Alter, Amend or Vacate (Doc. # 24 and herein, the "Motion to Alter") and the Debtor's Motion to Compel and Motion for Sanctions (Doc. # 29 and herein, the "Motion to Compel"). (Terms defined in the July 16 Order shall have the same meanings when used herein).

BACKGROUND:

The Complaint giving rise to this action was originally filed by the Debtor in State Court (Doc. #1). That action became an Adversary Proceeding when Heritage removed it to this Court. *Id*. After filing an Answer and Counterclaim (Doc. #5), Heritage filed a Motion for Judgment on the Pleadings (Doc. #6 and herein, the "Heritage JPMotion"). On May 22, 2008 at the hearing on the Heritage JPMotion, the Court instructed the parties that, pursuant to Rule 7012, making FRCP 12(b)-(h) applicable, the Heritage JPMotion would be treated as a motion for summary judgment under Rule 7056 and FRCP 56. (Doc.#13). Also, in light of the relief requested by the Debtor in his Motion to Dismiss (Doc. #11 and herein, the "Debtor Remand Motion"), the Debtor Remand Motion would be treated as a motion to remand the Adversary Proceeding to the State Court. *Id*. The parties were given until June 16, 2008 to submit briefs, authorities, affidavits and other materials to support their respective positions. *Id*.

In support of the Heritage JPMotion and in opposition to the Debtor Remand Motion, Heritage submitted a brief and the Affidavit of James Easterling (Doc. #17 and herein, the "First Affidavit"). In the First Affidavit, Easterling authenticated a copy of the Foreclosure Deed

2

evidencing the foreclosure by Heritage of the Debtor's real property (the "Foreclosed Property") and a copy of the written demand for possession served on the Debtor. Easterling testified in the First Affidavit that, based on his personal knowledge and account records kept in the ordinary course of business, all payments made by the Debtor on the mortgage loan were properly applied; at the time of foreclosure, the Debtor's mortgage was delinquent in excess of $8,744.91; and the Debtor remained in possession of the Foreclosed Property after demand for possession. The Debtor submitted a brief (Doc. #18) but did not submit an affidavit or any other evidence in support of his position.

After careful consideration of the pleadings in this Adversary Proceeding (including the pleadings removed from State Court), the Debtor's bankruptcy petitions and schedules filed in his three successive bankruptcy cases (i.e the Instant Case, the First Case, and the Second Case), arguments of counsel, the parties' briefs, and the First Affidavit (including the attached Foreclosure Deed and demand for possession), the Court entered the July 16 Order. In the July 16 Order, the Court denied the Debtor Remand Motion and found, *inter alia*, the foreclosure was valid and Heritage was entitled to possession of the Foreclosed Property. The Debtor was given 10 days to peacefully surrender possession of the Foreclosed Property to Heritage. The July 16 Order further provided that "Should the Debtor Fail to timely surrender the property, Heritage shall be entitled to petition this Court or the State Court for the forcible eviction of the Debtor from the property and for the assessment of damages for wrongful retention of possession." (July 16 Order, pp. 16-17).

POST-JUDGMENT MATTERS:

On July 29, 2008 Heritage filed a Motion for Writ of Possession and for Expedited Hearing

3

Case 08-40035-JJR    Doc 32    Filed 08/26/08    Entered 08/26/08 16:15:54    Desc Main
Document    Page 3 of 9

(Doc. #21 and herein, the "Motion for Possession") supported by another Affidavit of James Easterling (the "Second Affidavit"), in which Easterling testified the Debtor remained in possession of the Foreclosed Property.  In the Motion for Possession, Heritage sought a writ of possession from this Court directed to "the Sheriff of Cherokee County, Alabama[1] or any other lawful officer, to place Heritage . . . in possession of the subject property."

On August 7, 2008, the Debtor filed his Motion to Alter, Amend or Vacate the July 16 Order (Doc. #24 and herein, the "Motion to Alter"), and the next day, Heritage filed its Response to the Motion to Alter (Doc. #26 and herein, "Heritage's Response").  The Court set a hearing on the Motion for Possession and the Motion to Alter for August 12, 2008. (Doc. #'s 22-25).

2004 CHECK AND 2006 RENEWAL NOTE:

Attached to the Motion to Alter was a copy of a check dated May 20, 2004 drawn on the Alabama Teachers Credit Union in the amount of $8,744.91 payable to DeKalb Bank on which the remitter was identified as "John H. Green," the Debtor (the "2004 Check").[2]  A copy of the reverse side of the 2004 Check indicated it was negotiated by DeKalb Bank on May 21, 2004.  Heritage is the successor to DeKalb Bank (see Foreclosure Deed attached to the First Affidavit).  The Motion to Alter was not supported by the Debtor's affidavit or otherwise except for the attached copy of the 2004 Check.  Although the copy of the 2004 Check was not authenticated, Heritage did not question

---

[1] This Bankruptcy Court is a unit of the U.S. District Court for the Northern District of Alabama (28 U.S.C. § 151), and has no jurisdiction to direct or order a State of Alabama County Sheriff to assist in enforcing an order issued by this Court.  However, this Court does have jurisdiction to enlist the assistance of the U.S. Marshal for such purpose.

[2] The 2004 Check was described as a money order in the Debtor's Motion to Alter.

its authenticity.

Attached to Heritage's Response was a copy of a Simple Interest Fixed Rate Note/Disclosure and Security Agreement dated July 22, 2006 in the principal amount of $88,543.12 (the "2006 Note"). The mortgage described in the 2006 Note as security therefor, is the same as described in the Foreclosure Deed identified by Easterling's First Affidavit. Although the copy of the 2006 Note was not authenticated by an affidavit or otherwise, the Debtor did not question its authenticity.

The Debtor's Motion to Alter stated in pertinent part, "[t]hat the crux of the issue before this court revolves around the disputed payment in the amount of $8744.91 and whether Heritage Bank . . . had properly applied all payments." (Motion to Alter, ¶ 3). The Debtor was obviously referring to paragraph 17 of his Complaint in which he alleged he "paid in *cash* to [Heritage] $8,744.91 of [sic] which has not been applied to the Debtor's principle [sic] balance . . . ." (emphasis added). Apparently the Debtor is now offering the copy of the 2004 Check as evidence of payment of the "disputed payment."

The 2004 Check does not qualify under Rule 9024 and FRCP 60(b) as "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." The alleged $8,744.91 payment has been at issue at least since the Complaint was filed in State Court on April 23, 2008. With due diligence, the Debtor could have obtained a copy of the 2004 Check before the hearing on the Heritage JPMotion and certainly within the time the Court allowed for submissions on the Heritage JPMotion and the Debtor Remand Motion. Moreover, and probably more telling, even if the 2004 Check was not accessible to the Debtor, he could have submitted his affidavit stating a payment was made to Heritage for which he was not given credit. To this day and for some unknown reason, the Debtor refuses to give sworn testimony

5

supporting any of his allegations in the Complaint.[3] A closer analysis will explain why.

The Complaint alleged the disputed $8,744.91 payment was in cash and did not mention the payment date. Contrary to the allegations in the Complaint, the payment made through the 2004 Check was obviously not a cash payment. And the allegations in the Complaint imply the payment was made shortly before the Debtor filed his last bankruptcy case (April 11, 2008), not four years ago.[4] Even if the 2004 Check did qualify as newly discovered evidence under Rule FRCP 60(b), which it does not, Easterling's affidavit testimony was not rebutted by the Debtor's submission of the 2004 Check. The First Affidavit submitted by Easterling on behalf of Heritage stated under oath that no *cash* payment of $8,744.91 was received. Moreover, Easterling stated in the First Affidavit that based on personal knowledge and records of account kept in the ordinary course of business, *all* payments made by the Debtor had been properly applied. If the Debtor had filed his own affidavit stating one or more payments had not been properly applied, he would have raised a question of material fact sufficient to avoid summary judgment under Rule 7056 and FRCP 56; no such affidavit was filed.

As mentioned above, in his Complaint and his brief submitted in opposition to the Heritage

---

[3] Debtor's counsel asked the Court to treat Debtor's schedules as sworn testimony in lieu of an affidavit. However, it is impossible for the Court to do so because the Debtor's chapter 13 case was dismissed on May 9, 2008 for failure to file the schedules and forms required by the Bankruptcy Code.

[4] In paragraph 17 of his Complaint the Debtor alleged the disputed $8,744.91 payment "may be a preferential payment of which should be refunded to the Estate." The preference period is 90 days before a bankruptcy case is filed. 11 U.S.C. § 547(b). This allegation implied the disputed payment was made within 90 days before the date Debtor filed the Instant Case, i.e. April 11, 2008. We now know the disputed payment was made approximately four years before the Debtor filed this bankruptcy case.

6

JPMotion, the Debtor never mentioned the date of the payment he claimed was not properly applied to his mortgage. We now know the date of that payment was May 20, 2004: the date of the 2004 Check. However, over two years after the 2004 Check was cashed by Heritage, the Debtor renewed and refinanced his mortgage loan held by Heritage. The renewal was evidenced by the 2006 Note submitted with Heritage's Response.[5] On its face, the 2006 Note stated, "THE PURPOSE OF THIS LOAN IS REFINANCE OF BALLOON LOAN," and it is "SECURED BY A SEPARATE REAL ESTATE MORTGAGE & REAL ESTATE MORTGAGE AMENDMENT." The recording information describing the mortgage in the 2006 Note was the same information describing the mortgage recited in the first paragraph of the Foreclosure Deed attached to the First Affidavit. If the Debtor had any claims or defenses associated with the misapplication of the payment evidenced by the 2004 Check, or any other payment made before July 22, 2006 (the date of the 2006 Note), those claims and defenses were waived when he signed and delivered the 2006 Note. Heritage gave good and sufficient consideration for the 2006 Note when it renewed and extended the maturity of the Debtor's loan. See *Holczstein v. Bessemer Trust & Savings Bank*, 223 Ala. 271, 136 So. 409 (Ala. 1931). "[W]here the facts and circumstances are such that a reasonable prudent person, judged by normal standards, would or should have made inquiry, which inquiry, if reasonably pursued and with ordinary diligence, would have lead to foreknowledge of his defenses, then it becomes the duty of the party or parties, to make such inquiry or investigation before executing the renewal note, and if he fails to do so he is as much bound as if he had actual knowledge of all the facts." *Turner v.*

---

[5] As mentioned before, Heritage did not question the authenticity of the 2004 Check submitted by the Debtor with the Motion to Alter, and the Debtor did not question the authenticity of the 2006 Note submitted with Heritage's Response. If the Court is going to ignore the untimeliness of the submission of the 2004 Check, it must do the same with regard to the 2006 Note.

7

Case 08-40035-JJR    Doc 32    Filed 08/26/08    Entered 08/26/08 16:15:54    Desc Main
Document      Page 7 of 9

*Wakefield*, 481 So. 2d 846, 848 (Miss. 1985). The unpaid loan balance reflected on the face of the 2006 Note would have put a reasonable and prudent borrower on notice that credit had not been given for the 2004 Check if in fact no such credit had been given.

DEBTOR'S MOTION TO ALTER:

In his Motion to Alter, the Debtor complains that the "Court treated the Plaintiff's Motion for Judgment on the Pleadings as a Motion for Summary Judgment and granted him [sic] relief that was not sought." Counsel for the parties were told in no uncertain terms at the hearing on May 22, 2008 that the Heritage JPMotion would be treated as a motion for summary judgment and the Debtor's Motion to Dismiss would be treated as a motion to remand, and the parties were given until June 16, 2008 to file their briefs and submissions. (Doc. #'s 13,14, 15). At neither the hearing nor in his brief, or otherwise, did the Debtor object to this procedure or the Court's treatment of the Heritage JPMotion as a motion for summary judgment. It is now too late to object.

The Court will not critique line-by-line the remainder of the Motion to Alter. Suffice it to say that, like the Debtor's Complaint, it contains unsupported and vague allegations,[6] and makes no credible argument that would support an alteration or amendment of the July 16 Order pursuant to Rule 9024, FRCP 60(b) or otherwise.

DEBTOR'S MOTION TO COMPEL:

On May 21, 2008, the day before the hearing on the Heritage JPMotion and the Debtor

---

[6] The Debtor's Motion to Alter reads more like an amendment to his Complaint rather than a motion made pursuant to Rule 9024 and FRCP 60(b). For example the motion, for the first time in this Adversary Proceeding, asserts claims for Truth-in-Lending violations and failure to comply with loan servicing requirements.

8

Remand Motion, the Debtor served interrogatories and requests for production on Heritage. (Doc. #10). However, the Motion to Compel was not filed until almost a month after the Court ruled on the Heritage JPMotion and the Debtor Remand Motion. If the Debtor needed responses to discovery to support his opposition to the Heritage JPMotion he should have said as much during the May 22 hearing or filed his Motion to Compel before June 16, 2008 when the motions were taken under submission by the Court. Responses to discovery are not routinely filed with the Court, so the Court had no means of knowing Heritage's responses were outstanding when it took the motions under submission. The Debtor's Motion to Compel simply was filed too late: it was not filed until after the Court had entered the July 16 Order which was dispositive of all issues other than post-judgment remedies. The Debtor's Motion to Compel is due to be denied as moot.

HERITAGE'S MOTION FOR POSSESSION:

Inasmuch as the Debtor has not surrendered possession of the Foreclosed Property to Heritage, he is in violation of the July 16 Order. The appropriate remedy, and indeed the only remedy, is the ejectment of the Debtor and his personal property from the Foreclosed Property that is now owned by Heritage. Pursuant to 11 U.S.C. § 105(a), Rule 7070 and FRCP 70, and to preserve the peace and assure the integrity of this Court's orders, Heritage is entitled to the assistance of the United States Marshal's Service for the purpose of enforcing the July 16 Order.

Pursuant to Rule 9021 a separate Judgment, and a separate Writ of Ejectment directed to the United States Marshal's Service will be entered in conformity with this Memorandum Opinion.

Dated this 26th day of August 2008.

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge